IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JULIE A. SU, Acting Secretary of Labor,      )
United States Department of Labor,           )          Civil Action
                                             )
                            Plaintiff,       )          No. 23-cv-1795 (SDW) (LDW)
                                             )
                 v.                          )
                                             )
PORT POLICE AND                              )
SECURITY GUARDS UNION, LOCAL 1456,           )
                                             )
                                             )
                            Defendant.       )

## STIPULATED ORDER AND CONSENT DECREE

NOW, this _14th_ day of _____May_____, 2024, by the mutual agreement of the parties and without waiver of any arguments contained in any pleading or other filing in the above-captioned matter, and without admission of any facts or liability by Defendant Port Police and Security Guards Union, Local 1456 (the "Union" or "Local"), and at the request of the United States Department of Labor ("Department") and the Union (collectively referred herein as the "Parties"), it is hereby ORDERED:

1.      Plaintiff brought this action on March 30, 2023, under the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. §§ 481-483 ("the LMRDA"). The Complaint requested that Defendant's 2022 election for Union officers, which was conducted on November 1, 2022, be declared void, and further requested that a new election be conducted under the supervision of Plaintiff.

2.      Plaintiff alleged that violations of Title IV of the Act, 29 U.S.C. § 481, et seq., had occurred and had not been remedied at the time of the institution of this action.

Stipulated Order and Consent Decree
1

3.     Defendant denies the violations alleged in this action, and submits that the Union applied its election rules under its By-Laws in a consistent and reasonable manner for determining members' candidacy for nomination and election purposes for the Defendant's 2022 election for Union officers.

4.     Within thirty (30) days of this Order, the Union shall execute an amendment to its By-Laws based on the following modifications:

a.  Article VI, Paragraph 4 will be deleted in its entirety and replaced to read as follows:

No member shall be nominated who has not attended at least one regular membership meeting in each quarter during the five (5) quarters immediately preceding the election. The quarter in which the election is held shall not be included in computing the five quarters. In the event a member, otherwise eligible, is unable to attend any meeting necessary to qualify for nomination as above provided, that absence will be excused under the following reasons and applicable conditions:

(1) the member was actively working as a Pier Guard, Port Watchman, Gateman, and/or Roundsman on the date of the membership meeting;

(2) the member was performing official business on behalf of this Local or the International on the date of the membership meeting;

(3) the member was absent from the meeting due his or her illness or medical condition, and provided reasonable documentation of such excuse to the Local prior to and at least three (3) business days in advance of the Nominations Meeting;

(4) the member was absent in order to aid or care for a family member of the member during diagnosis, care, or treatment of, or recovery from, the family member's mental or physical illness, injury or other adverse health condition, or during preventive medical care for the family member, *cf.* N.J.S.A. 34:11D, and provided reasonable documentation of such excuse to the Local prior to and at least three (3) business days in advance of the Nominations Meeting;

(5) the member could not safely attend the meeting because the member was quarantining or isolating at home or in a medical facility in accordance with the instructions, advice, or guidance of a physician or a local, state, or federal government agency, and provided reasonable documentation of such excuse to

Stipulated Order and Consent Decree

2

the Union prior to and at least three (3) business days in advance of the Nominations Meeting;

(6) the member was attending the funeral of an immediate family member (e.g., a child, spouse, sibling, parent, or grandparent), and provided reasonable documentation of such excuse to the Union prior to and at least three (3) business days in advance of the Nominations Meeting.

Reasonable documentation to establish an excuse may include, without limitation, copies of:

(i)     a health professional's written medical note(s) or instruction(s) regarding the medical conditions for the member (or his family member if the reason for the excuse sought pertains to the member's family member);

(ii)    the member's employment records (as well as the Local's Employment Work Record as defined herein) for approved paid sick or personal day(s) as of the date of the meeting;

(iii)   written guidance or advice regarding quarantine or isolation issued by a health professional or on local, state or federal government or agency guidance;

(iv)    subject to (vi), a signed written statement from the member describing the nature of his or her medical condition(s) or role in the care for a family member that are the subject and reason for the requested excuse;

(v)     obituary or funeral bulletin, pamphlet or program identifying the death of an immediate family member (e.g., a child, spouse, sibling, parent, or grandparent) and that the funeral was held on the date of the meeting; and/or

(vi)    any other documentation reasonably necessary to establish that a member qualifies for the relevant excuse that is requested by the Local.

For Excuses Nos. 3 through 6 above, a member must apply, in writing, for an excuse and provide accompanying reasonable documentation for each relevant meeting from which the member was absent in a qualifying quarter and for which the member seeks to be counted for purposes of establishing their eligibility to qualify for nomination. For Excuses Nos. 3 through 6, "reasonable documentation" must establish, reasonably support, and justify the requested excuse. Members are encouraged to submit their request at the earliest

Stipulated Order and Consent Decree

3

convenient time.   However, absent exigent circumstances, members shall submit excuses for Excuses Nos. 3 through 6 no later than three (3) business days before the Nominations Meeting.

For Excuse No. 1 above, the Local shall request a copy of the members' employment records from the industry employers and maintain an internal record of each member's employment record related to hours worked and/or approved paid leave time off (e.g., vacation, sick or personal day(s)) on the dates for the Local's membership meetings held during the five (5) quarters immediately preceding the election ("Employment Work Record").

For Excuse No. 2 above, the Local shall maintain an internal record of each member's hours worked for the Local or the International on the dates for the Local's membership meetings held during the five (5) quarters immediately preceding the election ("Union Work Record").

All members shall be granted an excuse under Excuse Nos. 1 and 2 based on their work hours reflected in the Employment Work Record without having to submit a request for such a work-related excuse.  As such, members who are granted an excuse under Excuse Nos. 1 and 2 shall be treated as having attended any membership meeting for each meeting date for which the Local confirmed that a member was actively working in covered employment (and not receiving approved paid leave or time off).

Upon a member's written request, the Local will advise a member of his or her excused absences under Excuse Nos. 1 or 2 for any membership meeting based on the Employment Work Record and provide a copy of all supporting information relating to such absence.  If the member disagrees with his or her information in the Employment Work Record, the member must provide a copy of his or her employment records for the applicable meeting date that he or she is requesting Excuse Nos. 1 or 2 to be applied and must submit such documentation to the Local at least three (3) business days before the Nominations Meeting.

The Local shall be responsible for maintaining the Employment Work Record, and shall make the portion of that record relating to each member available to that member upon request.  If an excuse is approved, the member shall be treated as though they attended the corresponding meeting for which they were absent in order to establish their eligibility to qualify for nomination.

b.  Article XI, Paragraph 1 will be deleted in its entirety and replaced as follows:

Regular Meetings shall be held on the first Monday of each month, at the offices of the Local unless the President, with the approval of the Executive Board, shall designate another date and/or location.  The first meeting of each quarter shall be the Quarterly Meeting.

Stipulated Order and Consent Decree
4

c.  Article XI, Paragraph 2 will be deleted in its entirety and replaced as follows:

Unless a written notice of change is sent to all members, Regular Meetings shall be held at 6 p.m. on the first Monday of the Months of January, March, May, July, September and November; and Regular Meetings shall be held at 10 a.m. on the first Monday of the months of February, April, June, August, October, and December.

5.  The foregoing additions to the By-Laws shall become effective as of January 1, 2024, and the Union shall notify the members of these additions to the By-Laws within thirty (30) days of the date of this Order.  The Union shall not modify the provisions of the By-Laws described in Paragraph 4 herein prior to the December 2025 election.

6.  The Department of Labor shall suspend its challenge to the election results of the 2022 Election of Officers pending the Union's regular triennial officer election to be held in December 2025 ("2025 Union Election").  The officers elected in the 2022 Union Election shall serve through the 2025 Union Election.

7.  Recognizing the mutual consent of the Parties with the support of the present leadership of Local 1456, the 2025 Union Election will be a supervised election within the meaning of the LMRDA, 29 U.S.C. §§ 481-483, and, insofar as lawful and practicable, in accordance with Union's Constitution and By-Laws as amended by this Order.

8.  The Union may conduct the supervised 2025 Union Election through an election trustee, who may preside over the 2025 Union Election, provided that such election trustee shall be instructed to comply with the Department's supervised election in accordance with the terms of this Order.

9.  Accordingly, and by way of explanation, it is further ORDERED that, as part of the Department's supervised election:

Stipulated Order and Consent Decree

5

a. All decisions as to the interpretation or application of Title IV of the LMRDA and Defendant's Constitution and By-Laws relating to the supervised election, including decisions regarding the Union's meeting attendance requirement, excuses therefrom, and notices to the membership, are to be determined by the Acting Secretary, and her decision shall be final, subject to challenge in this Court. However, the Union's proposed interpretation or application of its Constitution and By-Laws, after review by Union Counsel, shall be considered by the Secretary or Acting Secretary and given appropriate weight. The Union's interpretation or application may be presented by the Union's independent election trustee or Union Counsel.

b. The Secretary or Acting Secretary's designated election supervisor shall review the eligibility of any candidate nominated for Union office in the 2025 Union Election.

c. Any protests concerning any aspect of the supervised election for the 2025 Union Election shall be filed in writing directly with the Secretary or Acting Secretary's designated election supervisor no later than 10 days after the completion of the ballot tally or, if applicable, the affirmation of uncontested candidates at the nominations meeting. In the event a violation that may have affected the outcome occurs and cannot be remedied, the Secretary or Acting Secretary shall conduct a rerun of the supervised election.

d. After completion of the supervised election and resolution of any disputes or challenges, the Secretary or Acting Secretary will promptly certify to the Court the name of the persons elected to serve as Union officers. See 29 U.S.C. § 482(c).

e. The Secretary or Acting Secretary shall further certify that the supervised election was conducted in accordance with Title IV of the LMRDA and, insofar as lawful and practicable, except as otherwise provided herein, in accordance with the provisions of the Union's Constitutions and By-Laws as amended by this Order.

10. The Court shall retain jurisdiction of this action pending completion of the supervised election and submission of the certifications in Paragraphs 9(d) and 9(e).

11. After being notified of certification by the Secretary or Acting Secretary described in Paragraphs 9(d) and 9(e), the Court shall remove the case from civil suspense and enter a final judgment declaring that such individuals have been elected as shown in the Secretary or Acting Secretary's certification for the 2025 Union Election. At that time, this Consent Decree will terminate.

12.    Accordingly, all Union officer elections following the 2025 Union Election shall be conducted in accordance with the LMRDA and other governing law.  The parties do not agree that any subsequent election will be supervised, and this Order does not require that any subsequent election be supervised.  Insofar as each such subsequent election is conducted in a lawful manner and in accordance with Union's Constitution and By-Laws as amended by this Order, this Order shall not be read to suggest any future obligation by the Secretary or Acting Secretary to supervise any election or any further cause for any such election to be supervised.  Any dispute between the parties regarding the consistency of any subsequent election with the Union's Constitution and By-Laws, the LMRDA, or any other statute or regulation shall be addressed through appropriate, then-existing administrative and litigative processes without modification based on the existence of this case or this Consent Decree.

13.    Each Party shall bear its own fees, costs and other expenses incurred by that Party in connection with this proceeding up to and including the date of entry of the final judgment. The Parties agree to comply with all provisions of this Stipulated Order and Consent Decree.

BY THE COURT:

_____
Hon. Susan D. Wigenton
United States District Judge

Stipulated Order and Consent Decree
7

By Consent of the Parties:

PHILIP R. SELLINGER
United States Attorney

_____
PAUL W. KAUFMAN
Assistant United States Attorney

Eleanore Simms
Rebecca Azhdam
United States Department of Labor

*Counsel for the United States*

_____
Stephen Mogila, Esquire
Lauren Bonaguro, Esquire
Fuiman Mogila LLP
5 Penn Plaza, 23rd Floor
New York, New York 10001

*Counsel for Local 1456*

Stipulated Order and Consent Decree
8